IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SHELTON MERRIWEATHER, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:20-CV-119-MHT-KFP |
| CREATESPACE, et al., | ) |
| Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Shelton Merriweather claims that Defendants Amazon.com, Kindle Direct Publishing ("KDP"), and CreateSpace sold copies of his book without his permission, infringed his copyright, and violated unspecified state laws. Merriweather has also asserted one or more claims against Amazon's alleged customer service representative, Brandon Wrigley. Before the Court is Defendants' motion to dismiss the individual defendant and to compel arbitration. Doc. 24. Plaintiff was given several opportunities to show cause why the motion should not be granted (Docs. 26, 35, 41); however, Plaintiff failed to respond to the Court's last show cause order. For the reasons set forth below, the undersigned recommends that Defendants' motion be GRANTED.

**I.     BACKGROUND**

Defendant KDP is a part of Amazon.com, Inc. Doc. 24-1, ¶ 1. Amazon has historically provided third-party publishers and authors a method to upload and sell electronic books through two separate services: CreateSpace and KDP. *Id*. at ¶ 2. In 2018, services CreateSpace and KDP merged. *Id*. Plaintiff's book, "Be Ye Perfect: The

New Covenant From The Word of God," was published and sold through CreateSpace. *See id*. at ¶ 4; *see also* Docs. 1-3; 1-4.

Merriweather created a CreateSpace account in 2013. Doc. 24-1, ¶ 4. In order to establish that account, he first had to accept the CreateSpace Member Agreement ("CreateSpace Agreement"). *Id*. That step of the account set-up process applied to all publishers and authors, like Merriweather, who utilized the service and created an account. *Id.* After CreateSpace and KDP merged, all CreateSpace authors who had not yet migrated to the new platform, including Plaintiff, received an electronic notice that the KDP Terms and Conditions would replace the CreateSpace Agreement (together the "Agreement"). *Id.* at ¶ 6.

Both the CreateSpace Agreement and the KDP Terms include an arbitration clause stating that "[a]ny dispute or claim relating in any way to this [Agreement or KDP] will be resolved by binding arbitration, rather than in court[.]" Doc. 24-1, Ex. A § 15 (CreateSpace Agreement); Ex. B § 10.1 (KDP Terms). Both agreements also provide that, with applicable federal law, the laws of the State of Washington will govern the Agreement. *Id.*, Ex. A § 15; Ex. B § 10.2.

## II. DISCUSSION

### A. The Court Lacks Personal Jurisdiction Over the Individual Defendant.

Plaintiff makes one specific allegation about Wrigley, Amazon's customer service representative: that he "hold[s] residen[ce]" in Seattle, Washington. Doc. 1 at 1. It appears Plaintiff also alleges that Wrigley "knowingly released to the Alabama Attorney General false and evasive information as to book sells [sic]"; however, he does

not specifically identify Wrigley as the actor. *Id*. ¶ 7. Plaintiff attaches to his Complaint a letter from Wrigley to the Alabama Attorney General's office. Doc. 1-1. He does not, however, allege that the letter itself is somehow unlawful or harmed him. *See generally* Doc. 1.

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (quotation and citation omitted); *see also Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999). When the nonresident defendant challenges jurisdiction and supports the challenge with evidence, the burden shifts back to the plaintiff to produce evidence in support of jurisdiction. *Diamond Crystal*, 593 F.3d at 1257. "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Id*. (quotation and citation omitted).

Plaintiff's claims against Wrigley must be dismissed because this Court lacks personal jurisdiction over him.[1] "[A] federal court may assert jurisdiction over a nonresident defendant only to the extent permitted by the long-arm statute of the forum State, and only if the exercise of the jurisdiction comports with the requirements of the Due Process Clause of the Fourteenth Amendment." *Vermeulen v. Renault U.S.A., Inc.*,

---

[1] Because the Court concludes it has no personal jurisdiction over Wrigley and the claims against him must be dismissed on that basis, the Court need not reach the issue of whether an independent basis for dismissal exists on the grounds that this defendant has not been properly served.

3

975 F.2d 746, 753 (11th Cir. 1992), op. modified and superseded on other grounds, 985 F.2d 1534 (11th Cir. 1993); *Chambers v. Groome Transp. of Ala., Inc.*, 2014 WL 7151138, at *2 (M.D. Ala. Dec. 12, 2014) ("A personal-jurisdiction challenge in federal court requires a two-part analysis. The Court first must determine its jurisdiction under the forum state's long-arm statute; second, it must decide whether exercising jurisdiction comports with principles of constitutional due process."). "When the courts of the forum State have interpreted the forum's long-arm statute to confer jurisdiction to the limits allowed by federal due process, state law need not be applied: [the Court] need only ask whether the exercise of jurisdiction over the nonresident defendant comports with due process." *Id*. Alabama's long-arm statute is coextensive with the constitutional requirements of the Fourteenth Amendment. *See, e.g.*, *Mutual Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004) ("Alabama's long-arm statute authorizes Alabama courts to assert jurisdiction to the fullest extent constitutionally permissible."); *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (citing Ala. R. Civ. P. 4.2(b)) ("In this case, the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible."). Therefore, analysis of jurisdiction in this case is controlled by federal due process principles.

A plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Here, Plaintiff does not allege that the Court has personal jurisdiction over Wrigley, and Defendant's submission makes clear he could not, as

neither general nor specific jurisdiction exists.

Personal jurisdiction may be either "general or all-purpose jurisdiction, [or] specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Id.* at 924; *see also, e.g.*, *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 407 F. Supp. 3d 1216, 1233 (N.D. Ala. 2019) ("General jurisdiction exists when the defendant is at home in the forum state—*i.e.*, he is domiciled here."). Additionally,

> [G]eneral personal jurisdiction derives from the defendant's contacts with the forum that are unrelated to the action being litigated. "The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum state."

*Aeropower, Ltd. v. Matherly*, 511 F. Supp. 2d 1139, 1154-55 (M.D. Ala. 2007) (quoting *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000)). Plaintiff alleges that Wrigley resides in Seattle, Washington. Doc. 1; Doc. 24-1 ¶ 3. He fails to allege any "continuous and systematic general business contacts" between Wrigley and the state of Alabama. Plaintiff has produced no evidence in response to the jurisdictional challenge to suggest otherwise. The Court, therefore, lacks general jurisdiction over Wrigley.

The Court also lacks specific jurisdiction over Wrigley. Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (citation and internal quotation marks omitted).

Exercise of specific jurisdiction requires that "the defendant's suit-related conduct . . . create a substantial connection with the forum State." *Id*. at 284. The "proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id*. at 290. To evaluate specific jurisdiction, this Court applies a three-part test, examining:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (citations omitted). The plaintiff bears the burden of establishing the first two prongs; if he does, the burden shifts to the defendant to establish the third. *Id*.

Plaintiff's Complaint fails to assert a jurisdictional connection under the first prong. To do so, Defendant's forum-related conduct must be, at a minimum, a "'but-for' cause of the tort." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1314 (11th Cir. 2018), *cert. denied*, 139 S. Ct. 1384 (2019); *see also Fraser v. Smith*, 594 F.3d 842, 851 (11th Cir. 2010) (explaining that but-for causation is required but not necessarily sufficient). On the record before the Court, Wrigley had a single contact with the forum: he sent a letter to the Alabama Attorney General. Doc. 1 ¶ 7; Doc. 1-1. Critically, however, Plaintiff's claims do not arise from the letter to Alabama's Attorney General.

Although Plaintiff's precise causes of action are unclear,[2] the thrust of Plaintiff's Complaint relates to Amazon's sales of his book—not Wrigley's explanation (e.g., the letter) related to those sales and the method available to Plaintiff to discontinue sales on the online platform. *See* Doc. 1, ¶¶ 3, 6, 10, 11, 13-16; *see generally* Doc. 1 at 4.

Wrigley's letter to the state Attorney General was apparently provided in response to Plaintiff's complaint there about the sales of his book. *See* Doc. 1-1; Doc. 1, ¶¶ 5, 7. The letter describes Amazon's sales of Plaintiff's book and gives instructions as to how Plaintiff could remove his book from publishing on Amazon, if he elected to do so. *Id*. This response letter is not the action upon which Plaintiff apparently centers his claims—Plaintiff seeks damages (on some basis) for Amazon selling his book. Therefore, the letter does not give rise to whatever action he pursues. Indeed, if Wrigley had not written the letter, Plaintiff's claims about the book sales would be the same. Thus, because Plaintiff's claims do not arise from Wrigley's alleged tie with Alabama—the letter—the Court lacks jurisdiction over Wrigley. *See, e.g., Thomas v. Mitsubishi Motor N. Am., Inc.*, 436 F. Supp. 2d 1250, 1254 (M.D. Ala. 2006) (finding no jurisdiction in Alabama based on defendant's website where plaintiff's claim was based on in-person transaction in Georgia); *Whatley v. Ohio Nat'l Life Ins. Co.*, 2019 WL 6173500, at *5 (M.D. Ala. Nov. 19, 2019) (finding no jurisdiction over claims by

---

[2] While Plaintiff alleges false information was given to the Alabama Attorney General (Doc. 1, ¶ 7), the basis for the Complaint appears to be the book sales (or use) he challenges. Plaintiff alleges, for example, that he "seeks damages [of up to a million dollars from each named defendant] . . . for copyright infringement under the copyright laws of the United States (17 U.S.C. section 101 et seq.) This action can entertain supplemental jurisdiction over plaintiff's claims arising under Alabama State Law pertaining to unauthorized use and enjoyment of Plaintiff's book, name, and any other unauthorized gain or advantage acquired therefrom by Defendants." Doc. 1 at 1; 4.

7

non-resident plaintiffs because they did not relate to defendants' contacts with Alabama, even though resident plaintiffs' claims did).

In any event, jurisdiction is improper because it would not comport with traditional notions of fair play and substantial justice. "The Due Process Clause protects one's liberty interests by shielding an individual from binding judgments in a forum with which he or she has established no meaningful contacts, ties or relations." *Pease v. Kelly Aero., Inc.*, No. 07-340, 2008 U.S. Dist. LEXIS 48187, at *11 (M.D. Ala. June 20, 2008) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). For this fair play and substantial justice inquiry, courts consider: (1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the "interstate judicial system's interest in obtaining the most efficient resolution of controversies"; and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

These factors weigh against this Court's jurisdiction over Wrigley. Wrigley would have no reasonable expectation of being haled into court in Alabama from across the country in the state of Washington. Wrigley would, therefore, suffer significant burdens from having to defend himself in this forum. Based on the Complaint and the Declaration of Mackenzie Smith, which Defendants submitted with their motion, the

witnesses and documents relevant to this action are also located in Seattle, Washington.[3] On this record, Alabama has no substantial interest in adjudicating this matter, given that it involves an agent of a corporation located in Washington engaging in conduct in Washington. *See* Doc. 24-1. Accordingly, the factors weigh against jurisdiction in Alabama. *See, e.g.*, *S. Masonry Constr., LLC v. Speegle Constr., Inc.*, 2008 WL 11380163, at *7 (N.D. Ala. July 30, 2008) (dismissing action for lack of personal jurisdiction and finding defendant would be "greatly burdened" since "all of its files and potential witnesses" were in Florida); *Echols v. Conros Corp.*, 2009 WL 10687739, at *9 (N.D. Ala. Mar. 30, 2009) (finding no personal jurisdiction over Canadian defendant, given "obvious" hardships, fact that agreement was executed in Canada, and no evidence that any witnesses or documents were in Alabama).

Thus, there is no basis under which this Court can properly exercise personal jurisdiction over Wrigley, and the Complaint, to the extent it asserts claims against him, should be dismissed.

**B.     This Matter Must Proceed in Arbitration.**

"The validity of an arbitration agreement is generally governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (the "FAA"), which was enacted in 1925 to reverse the longstanding judicial hostility toward arbitration." *Caley v. Gulfstream Aerospace*

---

[3] The record suggests, but does not definitively confirm, that this is the same location as Amazon's headquarters. Amazon's declaration attests to the existence of Amazon's headquarters in Seattle, but the declaration never confirms that this is intended to refer to the city located in the state of Washington. *See* Doc. 24-1, ¶ 3. Nevertheless, the Court takes judicial notice of the existence of Amazon's headquarters in Seattle, Washington. *See* https://www.amazon.jobs/en/locations/seattle-wa (referring to Amazon's headquarters in Seattle, Washington).

*Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-27 (1985); *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1312 (11th Cir. 2002)). "The FAA embodies a liberal federal policy favoring arbitration agreements." *Id*. (citations and internal quotation marks omitted). Pursuant to the FAA, a written arbitration "provision in any . . . contract evidencing a transaction involving commerce . . . [is] valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

When a party to an enforceable arbitration agreement fails to arbitrate a dispute that falls within the scope of an agreement containing an arbitration clause, the aggrieved party may petition the Court "for an order directing that such arbitration proceed." 9 U.S.C. § 4. If the Court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," the Court is required to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* If, however, "the making of the arbitration agreement" is a disputed issue, the Court must first adjudicate whether the agreement is enforceable against the parties. *See Bess v. Check Express*, 294 F.3d 1298, 1304 (11th Cir. 2002).

The language of the contract defines the scope of disputes that are subject to arbitration. *Gamble v. New Eng. Auto Fin., Inc.*, 735 F. App'x 664, 665 (11th Cir. 2018) (citing *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002)). If the Court finds that the claims are arbitrable under the agreement, the merits of the claims must be decided by the arbitrator. *See Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1109 (11th Cir. 2004). Thus, the Court decides whether "a particular dispute falls within the scope of an arbitration

10

clause," and an arbitrator decides "disputes over whether a particular claim may be successfully litigated anywhere at all (due to concerns such as statute of limitations, laches, justiciability, etc.), or has any substantive merit whatsoever." *Id*.

      1. *The Contract Between Plaintiff and Amazon included a Valid Arbitration Agreement.*

Amazon's evidence and argument demonstrate that the Agreement was made between it and Plaintiff when Plaintiff agreed to the provisions in order to create an account on CreateSpace. While Plaintiff's Complaint asserts that Amazon had no authority to sell (or use) his book, Plaintiff has not disputed the creation of his CreateSpace account. *See* Doc. 24-1, ¶ 4. Pursuant to the choice of law provision in the Agreement, Washington law applies. *See* Doc. 24-1, Ex. A § 15; Ex. B §10.2. Therefore, the Court examines that state's law on the formation of contracts to determine if an enforceable contract exists.

Here, Plaintiff could not establish a CreateSpace account without first agreeing to the CreateSpace Agreement. Doc. 24-1 ¶ 4. The CreateSpace Agreement, to which Plaintiff agreed when creating his account, included a clause that "any disputes" with Amazon or its agents must be arbitrated pursuant to the FAA. Doc. 24-1 ¶¶ 4-5, Ex. A § 15. The contract at issue is a common type of online contract, which requires a party to affirmatively agree to the terms presented; such a contract is known as a "clickwrap" agreement. *See, e.g., Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1327 (11th Cir. 2016) ("Today, virtually every Internet user is familiar with what have become known as clickwrap agreements—agreements [formed by] requiring a computer user to consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with

11

[a] . . . transaction.) (quotations omitted); *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 366 (E.D.N.Y. 2009), aff'd, 380 F. App'x 22 (2d Cir. 2010) (clickwrap agreements are those "in which website users typically click an ['agree' box after being presented with a list of terms and conditions of use"). In other words, Plaintiff was given an opportunity to review the Agreement and had to accept the Agreement before gaining access to a CreateSpace account. *See* Doc. 24-1, ¶ 4.

Washington courts have upheld this type of contract. *See, e.g., Doe v. Project Fair Bid Inc.*, 2011 WL 3516073, at *4 (W.D. Wash. Aug. 11, 2011) ("This kind of 'clickwrap' agreement has been upheld in several cases in this circuit and elsewhere."); *Hauenstein v. Softwrap Ltd.*, 2007 WL 2404624, at *2-3, 6 (W.D. Wash. Aug. 17, 2007) (enforcing arbitration agreement because plaintiff "manifested his assent to the License Agreement by 'clicking' the appropriate box"); *Riensche v. Cingular Wireless, LLC*, 2006 WL 3827477, at *2 (W.D. Wash. Dec. 27, 2006) (compelling arbitration where plaintiff "was required to agree to the Terms online" before proceeding to checkout and using defendant's services). Thus, the arbitration agreement contained within the clickwrap agreement is valid.

    2. *Plaintiff's Claims are Arbitrable.*

"Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint." *Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 384 (11th Cir. 1996). "In analyzing the scope of an arbitration clause, [courts] consider how the factual allegations in the complaint match up with the causes of action asserted and measure that against the language of the arbitration clause." *Doe v. Princess Cruise*

*Lines, Ltd.*, 657 F.3d 1204, 1220 n.13 (11th Cir. 2011).

As the Court has noted, the particular claims intended by Plaintiff are not abundantly clear, but it is clear that Plaintiff seeks damages (under state and federal law) from Amazon because he contends Amazon is selling his book in a manner that violates either his agreement with the book selling service (e.g., CreateSpace, KDP, Amazon), his copyright, or both. *See* Doc. 1. The arbitration clause in the Agreement, by its terms, covers "any dispute." Doc. 24-1 ¶¶ 4-5, Ex. A § 15. Based on that clause and the Agreement, there is no basis to conclude that Plaintiff's claims do not fall within that broad provision. Further, there is no evidence before the Court that suggests this broad arbitration agreement is unconscionable or otherwise unenforceable. Therefore, the FAA's pro-arbitration policy on these facts dictates that Plaintiff's claims against Amazon be decided in arbitration and not by this Court.

**III.   CONCLUSION**

First, because the Court lacks jurisdiction over Defendant Wrigley, the undersigned recommends that any claims asserted against him be dismissed. Second, Plaintiff signed up for an account with Amazon's CreateSpace service, which permits authors to upload and sell their books on Amazon.com. In doing so, Plaintiff was required to accept the CreateSpace Agreement, including the provision that he must arbitrate "any dispute" relating to the Agreement or the CreateSpace service. The Agreement between the parties is enforceable under the FAA, and the arbitration clause contained within it encompasses this dispute. Thus, the undersigned recommends that Plaintiff's remaining claims be required to proceed in arbitration.

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' Motion to Compel Arbitration and to Dismiss Individual Defendant (Doc. 24) be GRANTED; and

2. This case be DISMISSED.

It is further

ORDERED that, on or before **March 12, 2021**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered by the Court. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 26th day of February, 2021.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE